HENRY E. AVERILL AND OTHERS *vs.* GEORGE A. SAWYER.

Hartford Dist., Jan. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE and FENN, Js.

The plaintiffs and defendant entered into a written agreement by which they were to give him a lease of a store in a building which they were erecting, the agreement stating sundry particulars in which the store was to be fitted up. The lease was afterwards drawn, in accordance

Averill v. Sawyer.

with the agreement, and signed by the parties. In a suit upon it the defendant set up in defense and by way of counter-claim that certain things not specified in the written agreement as to the fitting up of the store, had previously been promised by the plaintiffs and had not been done, and that he in consequence refused to sign the lease, and that the plaintiffs had thereupon promised to do the things within a year, upon which he had signed the lease, but that they had neglected to do them as promised. Held that the evidence was inadmissible.

The agreement being in writing, all prior or contemporaneous stipulations with regard to the matter were merged in it.

And it did not alter the case that the suit was not on the agreement, but on the lease.

Nor was the evidence saved from the application of the rule by the fact that the prior promise, thus merged in the written agreement, was renewed by the plaintiffs at the time of the signing of the lease by the defendant.

The renewed promise could not be regarded as the consideration for the defendant's signing the lease, since he was already bound by the written agreement to sign it, and it could not therefore constitute a valid ground of action or defense.

The cases where parol evidence is admissible to affect a written instrument are cases where the written instrument is given in performance of a prior contract, and is not itself the entire contract between the parties.

[Argued January 3d—decided March 6th, 1893.]

ACTION upon the covenants of a lease; brought to the Superior Court in Hartford County, and tried to the court, before *F. B. Hall, J.* Facts found and judgment rendered for the plaintiffs, and appeal by the defendant. The matter set up by the defendant both as a defense and as a counter-claim is stated in the opinion. An agreement between the parties, upon the construction of which the case in large part depended, was as follows:—

" This agreement made this 26th day of February, 1887, between Henry E. Averill, Elisha P. Averill, Asenath P. Averill, and Charles E. Averill, hereinafter called the intended lessors, and George O. Sawyer, hereinafter called the intended lessee, witnesseth—

" That said intended lessors agree to grant, and said intended lessee agrees to take, a lease of all that certain store, to be numbered 418 and 420 Main street, in the city of Hartford, and to be presently erected by said lessors on the east

side of said Main street, together with the basement beneath said store, excepting a boiler and coal room not exceeding $20 \times 25$ feet that may be reserved for other tenants of said building when erected. Also the right to pass and repass over a certain gangway from the rear of said store to and from Talcott street. Said store when completed shall have a front on Main street of about forty feet, and shall extend eastward to said gangway, and shall have a plate-glass front, and be built and finished in the manner and style set forth in the plans of J. G. Glover, architect, a copy of which plans has been exhibited by said intended lessors, and examined and approved by said intended lessee, subject to certain slight modifications as to details of arrangement of stairways, doors, windows and closets, and to the further modification that the basement of the new store shall be eight feet in height instead of seven feet, as detailed in said plans.

"And it being for the mutual benefit of the parties hereto that said store shall be completed and occupied as soon as may be, said intended lessors agree to erect and complete the same as soon as the same can be well and conveniently done, and said intended lessee agrees to accept a lease for the term of ten years, and take possession of said premises immediately upon their completion, to wit, on the first day of September, 1887, or as soon thereafter as it may be practicable to complete the same.

"And it is mutually agreed that said lease shall be for a term of years, and shall contain a covenant on the part of said intended lessors that the lessee may, on the payment of the yearly rental of forty-five hundred dollars, to be reserved as aforesaid, and on the observance and performance of the covenants by the said lessee to be contained in said lease, quietly enjoy the premises to be so demised during the said term of lease; but if said building shall be destroyed by fire or other casualty, said intended lessors shall not be required to rebuild the same, and said intended lease shall be and become void. Said lease shall be in duplicate.

" Said intended lease shall contain covenants on the part of the lessee for the payment of a net yearly rental of forty-

five hundred dollars, in monthly installments of three hundred and seventy-five dollars on the first day of each month during said term, for his keeping said store and basement in good and sufficient condition and repair, and for the payment of all gas and water charges pertaining to said premises, and shall contain all other such covenants and stipulations as are usually contained in contracts of lease of the like premises in said city of Hartford. And it is understood and agreed that this instrument shall operate as an agreement of lease and not as an actual demise. Witness our hands and seals," etc.

The other facts of the case are sufficiently stated in the opinion.

*C. E. Perkins*, with whom was *J. L. Barbour*, for the appellant.

The general rule relied upon by the plaintiffs—that all prior negotiations and agreements are merged in the written instrument, and that evidence of a parol agreement altering or contradicting the terms of a written one is inadmissible—is familiar to us all. There are many cases, however, where evidence of agreements made by parol, at or before the time when written instruments are executed, is admitted to affect the rights of the parties, although they relate in some measure to the subjects of the written instrument; and our contention is that this is one of these cases. A well established class of cases of this kind is when the written instrument was executed in pursuance of a prior verbal agreement, and as an execution of a *part* of that verbal agreement, or, as it is sometimes expressed, when there was a verbal agreement as to the consideration for the written instrument. The principle is clearly stated in *Clarke* v. *Tappan*, 32 Conn., 56. There it was agreed by parol that if the plaintiff would execute a discharge the defendant would pay him a certain sum within two years. Evidence of this agreement was objected to because it was contemporaneous with the discharge and varied its effect, but the court, on p. 67, says :—" The rule evidently does not apply when the writing is merely given in performance of the con-

tract. In the present case the promise on the part of the plaintiff was to give the discharge. In giving this instrument he only did what he agreed to do. The defendant only accepted this performance as he was bound to do. It was not the object of the parties to provide better evidence of what the original agreement was." If the agreement of the Averills had been to pay some money to Sawyer if he would sign the lease, the two cases would have been exactly similar. There is nothing in the lease which is contradicted or varied by this evidence. It is entirely outside of any of the agreements of the lease. If that instrument had provided that the lessors should not put in a floor, there might be some ground for the objection, but there is nothing upon that subject. The court cite *Collins* v. *Tillou*, 26 Conn., 368, where the court express the same idea on p. 374. See also *Schindler* v. *Mulheiser*, 45 Conn., 154; *Hall* v. *Solomon*, 61 id., 482. The case of *Graffam* v. *Pierce*, 143 Mass., 386, is precisely in point. There a verbal agreement was made to give a lease of a hall, and as part of the consideration the lessor promised to put a hard pine floor into the hall. The lease was executed, and the lessor refused to put in the floor; the lessee sued him for his breach, and the lessor objected to the evidence on the same ground as in this case. The court says (p. 388):—" The written papers executed by the parties were in performance of the oral contract, and there is nothing in them inconsistent with the alleged promise of the defendant to put in a hard pine floor in the hall whenever the plaintiff should request it. This is a promise in its nature separable from the rest of the contract, and a promise to do something after the execution of the lease, and it relates to a subject distinct from anything contained in the lease." In *Morgan* v. *Griffith*, L. R., 6 Exch., 70, a lessee had agreed to hire certain lands, and to sign a lease, and entered on the land; when the lease was tendered to him for signature he refused to sign it unless the lessor would agree to destroy the rabbits on the land, which he agreed to do, and the lessee thereupon signed the lease. The lessor neglected to destroy the rabbits, and the

lessee sued him for breach of the agreement. It was objected that such a parol promise was inadmissible on the same grounds as is done here, but the Court of Exchequer Chamber consisting of six judges unanimously decided it admissible. KELLY, C. B., says (p. 73):—" I think the verbal agreement was entirely collateral to the lease, and was founded on a good consideration. The plaintiff, unless the promise to destroy the rabbits had been given, would not have signed the lease, and a court of equity would not have compelled him to do so, or only on the terms of the defendant performing his undertaking." See also *Mann* v. *Nunn*, 43 Law Jour. (C. P.,) 241; *Angell* v. *Duke*, L. R., 10 Q. B., 174; *Erskine* v. *Adeane*, L. R., 8 Ch. App., 756; *Lindley* v. *Lacey*, 17 Com. Bench, N. S., 478; *Harris* v. *Rickett*, 4 Hurlst. & Nor., 1; *Welz* v. *Rhodius*, 87 Ind., 1; *Chapin* v. *Dobson*, 78 N. York, 74; *Vandegrift* v. *Abbott*, 75 Ala., 487; *Cumming* v. *Barber*, 99 N. Car., 332; *Thomas* v. *Loose*, 114 Penn. St., 35; 17 Am. Encyc. of Law, 443, § 8, and notes.

*J. P. Andrews*, for the appellees.

FENN, J. The plaintiffs' complaint contains several counts. We need only mention the first. The first paragraph recites a lease which it is averred the defendant on October 1st, 1887, entered into with the plaintiffs, under their hands and seals, of a certain store on Main street in Hartford, in which lease among other things the defendant obligated himself to pay the water charges, whether the same should first be paid by the plaintiffs or not. The second paragraph avers the payment of these charges to the amount of $217 by the plaintiffs; and the third, the failure of the defendant to pay the same to the plaintiffs, in accordance with the agreement set forth in the lease. The defendant, by way of special defense to this count, alleges that he, about March 1st, 1887, in consideration of certain promises and agreements made by the plaintiffs, agreed to execute the lease recited; that among other things, the plaintiffs promised that the building to be erected by them, and in which the store and base-

ment to be leased by the defendant were to be situated, should be a thoroughly first class building, well finished, with the basement extending under the sidewalk to the curb line of the street, and so finished as to be suitable for the defendant's retail business, and that there should be laid, in the vestibule entrance to the store, a flooring, in small tile, with the defendant's name set in stone in the floor; that in consequence of the failure of the plaintiffs to fulfil their said promises and agreements the defendant refused to execute the lease on the day set for such execution, but finally on a later day, October 17th, 1887, in consideration of certain promises made on that day, one of which was that said tiling should be put in the vestibule at some time within one year from said date, the defendant did execute the lease and enter into possession of the premises; that the execution of the lease, and the promise therein to pay the water rents, were wholly in consideration of said agreements on the part of the plaintiffs; and that the plaintiffs did not place the tiling as agreed. The defendant also set up the failure to place the tile and the damage resulting therefrom by way of counter-claim. The plaintiffs by way of replication, first denying the material allegations of the special defense, stated that there was a written agreement to lease the premises described in the lease set out in the complaint, dated the 26th day of February, 1887, and that all the agreements in relation to the construction of the building and the matters set out in the defence were contained in said written agreement, which was then recited, being an agreement on the part of the plaintiffs to grant, and of the defendant to take, a lease of a store to be erected by the plaintiffs, with certain appurtenances, including a gangway, and describing the store as follows:—" Said store, when completed, shall have a front on Main street of about forty feet, and shall extend eastward to said gangway, and shall have a plate glass front, and be built and finished in the manner and style set forth in the plans of J. G. Glover, architect, a copy of which plans has been exhibited by said intended lessors and examined and approved by said intended lessee, subject to cer-

tain slight modifications as to details of arrangement of stairways, doors, windows and closets, and to the further modification that the basement of the new store shall be eight feet in height instead of seven feet as detailed in said plans." The agreement, as recited, contained further stipulations as to the date of the completion of the store and the duration and terms of the lease. The defendant rejoined, admitting the execution of the written agreement, but denying that all the agreements in relation to the construction of the building and the lease thereof were contained in said written agreement.

Upon the trial in the Superior Court, the plaintiffs having by uncontradicted evidence proved the due execution of the lease and written agreement, that the defendant entered into the possession of the premises under said lease and agreement, and that he had failed to pay said water charges, and the amount of said charges, the defendant, under his answer and counter-claim, offered to prove a parol agreement entered into between the plaintiffs and the defendant, prior to the agreement of February 26th, as a further consideration for the promises and undertakings of the defendant set forth in said agreement of February 26th and in said lease, and by which, in addition to or alteration of the plan or manner in which said building was to be constructed, as set forth in said agreement of February 26th, the plaintiffs promised that they would put in the vestibule of said store a mosaic tiling, with the defendant's name set therein, and would cause the ceiling to be painted, and certain walls to be calcimined, and that, the plaintiffs having failed to perform said parol agreement, the defendant for several days refused to execute said lease, and that before the execution of the lease by the defendant the plaintiffs renewed their said parol promise, and agreed that the same should be performed by them within one year, and that in consideration thereof the defendant executed the lease in question.

To the proof of this parol agreement the plaintiffs objected, upon the grounds that no such agreement was set forth in the defendant's pleadings, that all negotiations and agree-

ments as to what was to be performed by the plaintiffs in the leasing of the premises were merged and contained in the written agreement and in the lease, and that said parol agreement was variant from, and in alteration of, the terms of the written lease, and variant from the terms of the written agreement. The court excluded the evidence and the defendant excepted to the ruling. The plaintiffs recovered ·judgment, and the defendant appealed.

It will be seen that the record presents but a single question—that of the admissibility of the parol evidence offered. And in considering that, we may, at the outset, dismiss the first ground upon which the plaintiffs objected to its admission—that no such agreement was set forth in the defendant's pleadings, for, while this is correct as to a portion of the evidence offered, that in respect to the ceiling and calciming the walls, it is not as to the mosaic tiling with the name, so that we reach the consideration of the other grounds, which are, in effect, that this parol agreement is variant from the written agreement and lease, in which all prior undertakings and agreements should be held to be merged.

The rule which prohibits the introduction of parol evidence to contradict, vary or explain a written agreement, except in case of a latent ambiguity, is undoubted. That all prior negotiations and agreements are merged in the written instrument is admitted. But it is said by the defendant that, notwithstanding this, there are many cases where evidence of agreements made by parol at or before the time when written instruments are executed, are admitted to affect the rights of the parties, although they relate in some measure to the subjects of the written instrument. This also is doubtless true, and the contention is that the case before us falls within the principle underlying this class of cases. The principle applies when the written instrument was executed in pursuance, but only in partial execution, of a preceding verbal agreement.

This is well stated in *Clarke* v. *Tappan*, 32 Conn., 56, cited by the defendant. It is there said that the founda-

tion of the rule prohibiting the introduction of parol evidence is, that the parties have designedly put the agreement into a more reliable form, and that, to give the writing this conclusive effect, the agreement itself must be reduced to writing, and that the rule does not apply when the writing is merely given in performance of the contract. The same idea is also expressed in *Collins* v. *Tillou*, 26 Conn., 368, and in the very recent case of *Hall* v. *Solomon*, 61 Conn., 482. These were cases of deeds of land, and the decisions proceeded upon the ground that such deeds, upon the particular facts found, were in each case but a part execution of a prior contract, and not the contract itself. The same principle has been applied to leases, and many cases have been cited by the defendant. Thus in *Graffam* v. *Pierce*, 143 Mass., 386, a verbal agreement was made to give a lease of a hall, and as part of the consideration the lessor promised to put a hard pine floor in the hall. The lease was executed. The lessor refused to put in the floor, and the lessee sued him. The court held the parol evidence admissible, saying that the writing was but a part performance of an oral contract, and contained nothing inconsistent with the alleged promise. Among other cases cited, all resting upon the same principle, are *Morgan* v. *Griffith*, L. R., 6 Exch., 70 ; *Welz* v. *Rhodius*, 87 Ind., 1; *Chapin* v. *Dobson*, 78 N. York, 74; and *Erskine* v. *Adeane*, L. R., 8 Ch. App., 756. And although in cases of leases the proper application of the principle is not as clear and easy as in that of deeds, and no case has yet arisen in this state calling for such application to a lease, and such application should certainly be made with caution, yet, if there had been nothing in the case before us but a lease, it would have been such a case, and we might, under the circumstances, have reached the same conclusion as the other courts whose decisions are cited. But in the case before us the pleadings stated, and the undisputed evidence proved, the further fact, that back of the lease there was an agreement to lease, and that this agreement was not by parol, but in writing and under seal, a writing which appeared to be complete in itself, without any suggestion that it was de-

pendent upon or collateral to any other contract or agreement; one in which, to use the language of this court in *Glendale Mfg. Co.* v. *Protection Insurance Co.*, 21 Conn., 37, the parties apparently " deliberately put their engagement into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement." " In such cases," say the court in that case, "it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertakings was reduced to writing. After this to permit oral testimony would be dangerous and unjust in the extreme."

The defendant's counsel however contend that this separate written agreement should not be considered to affect the case, since the plaintiffs' suit was not brought on that agreement. It is true that it was not and could not have been. It was brought upon the lease executed in pursuance, and in partial execution, of the agreement; in full execution, as appears from its terms, on the part of the defendant. By signing a lease containing the terms and stipulations which the agreement of lease contracted that it should contain, the defendant had done all that he agreed in the contract to do, and no action could thereafter be maintained against him by the plaintiffs, based upon the agreement of the lease, and no cause of action thereon in their behalf remained. When, however, to their action upon the lease the defendant set up in defense, and as a counter-claim, a prior unexecuted contract on their part, in pursuance of which the lease was executed, it was proper for them to reply that the same was executed in pursuance of a written contract, and to recite it. And this being admitted in the pleadings, as well as proved in evidence without objection, such contract becomes relevant and material. Indeed the portion of the finding which we have quoted in this opinion states that the defendant offered the parol evidence in question partly as a consideration for this written agreement. Concerning which offer the language of the Massachusetts court, in *Howe* v. *Walker*, 4 Gray, 319, is relevant—" Nor can you, under the guise of proving by parol the consideration of a

written contract, add to or take from the other provisions of the written instrument." It is true, the record states that he also offered it as a part consideration for the lease, and offered to prove that the alleged promises of the plaintiffs, having been made before the agreement of February 26th, 1887, and furnishing a consideration therefor, such promises were afterward renewed before the execution of the lease, coupled with the agreement that the same should be performed within one year. It can hardly be claimed however, nor do we understand that it is claimed, that this last feature is of any legal significance. For if the alleged parol promises cannot be proved as a consideration for the written agreement of lease, and if such written agreement stands as the contract in pursuance of which the lease was executed, in pursuance of which the defendant was obligated to do the act which he did when he executed it, then the renewal of a promise, incapable of proof in the first instance as an additional consideration to the defendant for doing that which for an adequate consideration he was already obligated to do, could hardly be claimed to constitute a valid cause of action or of defense. And the admission of parol evidence of such a promise, under such circumstances, would be more fruitful of evil than productive of good.

That a promise to do what one is already bound to do is not a consideration, is a principle established by an overwhelming weight of authorities. *Dodge* v. *Stiles*, 26 Conn., 463; *Bartlett* v. *Wyman*, 14 Johns., 260; *Crosby* v. *Wood*, 6 N. York, 369; *Vanderbilt* v. *Schreyer*, 91 id., 392, 401; *Conover* v. *Stillwell*, 34 N. Jer. Law, 54; *Warren* v. *Hodge*, 121 Mass., 106; *McCaleb* v. *Price*, 12 Ala., 753; *Cobb* v. *Cowdery*, 40 Verm., 25, 28; *Runnamaker* v. *Cordray*, 54 Ill., 303; *Phœnix Ins. Co.* v. *Rink*, 110 id., 538; *Ford* v. *Garner*, 15 Ind., 298; *Reynolds* v. *Nugent*, 25 id., 328; *Billings* v. *Filley*, 21 Neb., 511; *Deacon* v. *Gridley*, 15 Com. Bench, 295; *Mallalieu* v. *Hodgson*, 16 Queen's Bench, 689.

There is no error in the ruling complained of and a new trial is denied.

In this opinion ANDREWS, C. J, and TORRANCE, J., concurred.

CARPENTER, J., (dissenting.)   On the 26th of February, 1887, the parties entered into a written contract, under seal, for a lease, to be subsequently executed, of a store then to be erected.   The contract described the store, and certain rights and privileges pertaining thereto, and then follows this provision :—"Said intended lease shall contain covenants on the part of the lessee for the payment of a net yearly rent of forty-five hundred dollars, in monthly installments of three hundred and seventy-five dollars on the first day of each month during said term, for his keeping said store and basement in good and sufficient condition and repair, and for the payment of all gas and water charges pertaining to said premises, and shall contain all other such covenants and stipulations as are usually contained in contracts of lease of the like premises in said city of Hartford."

This contract does not purport to contain all the provisions that should be embodied in the proposed lease.   It was manifestly intended to bind the parties, in general terms, the one to give and the other to accept a lease, leaving the covenants and stipulations to be contained therein to be agreed upon afterwards.   The store was finished about October 1st, 1887, and a lease was prepared, which the defendant at first declined to sign, for the reason that there was not laid in the vestibule entrance to the store a flooring in small tile with the defendant's name set in stone in the floor, claiming that there was a parol agreement that that should be done, entered into by the parties about March 1st, 1887.   It is agreed that this agreement was not in the written contract for a lease.

It was finally agreed that the defendant should sign the lease, which was done, and that in consideration thereof the plaintiffs should, within one year, put in said tile floor, etc.; which was not done.

In an action on the lease the defendant offered to prove his defense by proving this parol agreement and a failure to

perform the same. It was objected to upon the ground "that all negotiations and agreements as to what was to be performed by the plaintiffs in the leasing of said premises were merged and contained in said written agreement and in said lease; and that said parol agreement was variant from and in alteration of the terms of said written lease and variant from the terms of said written agreement."

It must be remembered that the contract which the defendant sought to enforce is not a contract made in February or March relating to a store to be thereafter finished, nor was it an agreement settling the terms of a lease to be thereafter executed; but it was a contract made in October, respecting a store then completed, and to be leased contemporaneously with the agreement; and the thing to be done was to be done on the property demised within one year. I cannot agree that the verbal contract made in October was merged in a written contract under seal and executed in the preceding February.

Nor can I agree that the lease excludes the evidence. The contract had no reference to the terms of the lease, although it did refer to the premises leased. It was not a stipulation to be embraced as a covenant in the lease, but was so far independent of it that it might legally exist contemporaneously with it and collateral to it. If the plaintiffs had also agreed to trade with the defendant at the store to the amount of $1,000 during the first year, the two contracts would have stood upon precisely the same footing. Surely it will not be contended that the lease would exclude parol evidence of such a contract.

There was a suggestion that the parol agreement made when the lease was signed is without consideration. My first answer to that is that the evidence was not rejected for any such reason and the record presents no such question. That is an objection that relates not to the admissibility of the evidence offered to prove the agreement, but to its validity and effect when proved. In the next place, the objection is without force except upon the assumption that the defendant was legally bound to sign the lease as it was. I cannot

concede that the assumption was well founded. There is no contract in existence, that we know of, prescribing the terms of the lease, except the lease itself. The contract of February 26th relates mainly to the manner of constructing and finishing the store. Its terms were substantially complied with before the lease was executed, and those stipulations were not embraced in the lease and were not intended to be. Moreover that contract in terms leaves the matter of covenants an open question.

It will be observed that I attach no special importance to the alleged parol agreement of about March 1st, 1887. In my view its only significance is that it served at least as an excuse for the refusal to sign the lease. The plaintiffs so far conceded the validity of the excuse as to promise that if the defendant would sign the lease the thing that he contended for should be done. It is that promise that the defendant now seeks to enforce. It may be that the parol contract of March 1st was merged in the written contract executed about that time, but that cannot affect the final agreement of October 17th. The latter was complete in itself, and, in legal effect, was independent of the former. Viewed in that light there can be no question about the consideration. There was a matter in dispute between the parties. No matter now which was right. It is enough for our present purpose that the plaintiffs yielded the point, and promised that if the defendant would sign the lease the thing that he contended for should be done. He did so. The consideration for that promise, and its validity and effect, ought, it seems to me, to be beyond all question.