### JOEL FARIST'S APPEAL FROM PROBATE.

The appellant having a claim against the estate of an intestate, of whom the wife of the appellant was an heir at law, conveyed by deed all his interest in the estate to the widow of the intestate, for her use during· her life, for which the widow paid no consideration. Before the execution of the deed the widow stated to the appellant that there was no need of the appointment of an administrator, as there were no debts against the estate, to which statement the appellant assented. The widow afterward, believing that there were no debts against the estate, purchased the interest of another heir in the estate, and paid for it more than it was worth if the claim of the appellant was paid, and more than she would have paid if she had known of his claim, or if he had not assented to her statement. At the time of making this statement the widow did not contemplate making the purchase, and the appellant had no knowledge or belief that such purchase had been or would be contemplated, and had no reason to believe that his assent to the statement would in any way induce the widow to make such purchase, or to act in any manner to her injury.

Held, that the deed to the widow did not affect the question of the liability of the estate to pay the claim of the appellant, but only its ability to do so, and that the appellant was not estopped, by his assent to the statement of the widow, from setting up his claim.

APPEAL from the doings of commissioners on the estate of Stephen Estile, deceased, in disallowing a claim of the appellant against the estate; taken to the Superior Court for Hartford county, and reserved for advice on the following facts found by an auditor:

The appellant on the 14th of April, 1864, loaned to Stephen Estile the sum of five hundred dollars, in consideration

whereof Estile promised to pay said sum to the appellant on demand. Estile died intestate at Windsor Locks on the 20th of April, 1867, leaving a widow, Margaret Estile, and four children, viz: ˙ Jane wife of Jesse Lyon, Eliza wife of the appellant, Melinda wife of James D. Mockridge, and Melissa Estile.

Letters of administration on the estate were granted to Aner Sperry the appellee, on the 30th of March, 1870, at the instance and request of the appellant, in order that his claim might be presented against the estate. The claim of the appellant is the only one presented against the estate, and the time limited for the presentation of claims has expired. On the 7th of June, 1867, the appellant and his wife, and all the other heirs of the estate except James D. Mockridge and his wife Melinda, who refused to sign it, which refusal was known to the appellant at the time he signed it, executed and delivered to the widow of the deceased an instrument in writing, by which they conveyed to her all the real estate of the deceased during her life, and· also gave up to her to use according to her discretion, for her support and maintenance during her life, all the estate of the deceased, the remainder of the estate to be distributed according to law equally among the heirs of the deceased. The intention of the appellant, in executing this instrument on his part with his wife Eliza, was to give to the widow the interest of Eliza in all the estate of the deceased, during the life of the widow, for her better support and maintenance. The widow paid nothing for the conveyance.

The appellant had knowledge of the decease of Estile at the time it occurred, and of the situation of the property, but he did not before or at the time of executing said writing, nor for several years afterward, make any claim to the widow or any of the children, or to any person interested in the estate, that the estate was indebted to him, and the widow and children had no knowledge of the existence of any such claim, until a short time previous to the granting of letters of administration in 1870.

The widow, before the execution of the instrument of June 7th, had a conversation with the appellant relative to taking

out letters of administration, in which she stated to him that there was no need of appointing an administrator, because there were no debts against the estate, to which statement the appellant on his part assented. The widow afterward, believing there were no debts or claims against the estate, which belief was induced in part by the assent of the appellant to her statement as made above, on the 23d of September, 1867, purchased of James D. Mockridge and his wife Melinda all their interest in the estate of the deceased, including their reversionary interest in the widow's dower, and received from them a deed of the same, for which she paid the sum of nine hundred dollars, which was more than the value of Melinda's interest in the estate in case the claim of the appellant is allowed and paid out of the estate, and more than she would have paid if she had known of such claim, and more than she would have paid if the appellant had not assented to her statement before mentioned. But at the time of this statement by the widow and the appellant's assent to it, she did not contemplate making the purchase, or the purchase of any part of the estate, and the appellant had no knowledge or belief that any such purchase by her had been or ever would be contemplated, and he had no reason to believe that his assent to her statement would in any way induce her to make such purchase, or to act in any manner to her injury; nor did the appellant know of any negotiations for the purchase till after it had been consummated.

*C. E. Perkins* and *J. W. Johnson,* for the appellant.

*H. H. Barbour* and *H. S. Barbour*, for the appellee.

Park, J.   It is found by the committee that the appellant has in fact a claim against the estate of the intestate to the amount of five hundred dollars for money loaned the intestate, and the principal question presented for our consideration is, whether the appellant is estopped from setting up such claim against the estate.   It appears in the case that before letters

of administration were taken out on the estate, Margaret. Estile, the widow of the intestate, had a conversation with the appellant, in which she stated to him that there was no need of having an administrator appointed, as there were no debts against the estate; to which statement the appellant assented. It appears further, that some time afterward the said Margaret, believing that there were no claims against the estate, which belief was induced in part by the assent of the appellant to her statement as aforesaid, purchased of one of the heirs of the estate all the right, title, and interest that the heir had to the estate, paying therefor as much as the interest of the heir was worth if the claim of the appellant should be disallowed, and more than she would have paid had she known of the claim of the appellant, and more than she would have paid if the appellant had given no assent to her said statement.

The committee further finds upon this subject as follows: "At the time of said statement by said Margaret and said Farist's assent thereto, it did not appear that said Margaret contemplated the making of said purchase, or the purchase of any part of said estate, and the said Farist had no knowledge or belief that any such purchase by her had been or ever would be contemplated, and he had no reason to believe that his assent to said Margaret's statement as before mentioned would in any way induce the said Margaret to make such purchase, or to act in any manner to her injury; and said Farist did not in fact know of any negotiations for said purchase, till after the same had been consummated."

We think the case of *Danforth* v. *Adams*, 29 Conn., 107, as well as many other cases that might be cited from our own reports, is decisive of the question presented in this part of the case, that the appellant is not estopped from setting up his claim against the estate by reason of his assent to the statement of the said Margaret. Judge HINMAN in that case says, " where there is nothing in the conduct or declarations of a party that can be imputed to him either as culpable negligence or a wilful misrepresentation, or the representation

was not intended to be acted upon as a statement of the truth, or is not tantamount to a promise or agreement that the declaration made is true, and consequently amounts to a guaranty that the party making it will be responsible for the consequences of any injury resulting from acting upon it, the party who, through misapprehension, ignorance, inadvertence, or for any similar cause, unfortunately makes declarations or does acts which have the effect to mislead, is nevertheless not estopped from alleging and proving the truth, when it is attempted to make him responsible for the injurious consequences of such acts or declarations; for otherwise it would result that the most innocent declarations and acts made or done even in the discharge of duty might subject a party to an action."

At the time the appellant assented to the declaration of Margaret, she had no intention to make the purchase that she subsequently made, and the appellant gave the assent with no reference to the said purchase. He had no reason to believe that it would ever be made, or that the assent would in any way mislead the said Margaret to her injury. Surely the case needs some of the essential elements of an estoppel. Had she stated to the appellant that she intended to make the purchase, or that she had the purchase in contemplation, and desired to know whether there were any claims against the estate, and the appellant had acknowledged that there were none, and she relying on the truth of the acknowledgment had made the purchase, then the appellant would have been estopped to make a claim against the estate so far as it would affect her interest. But in that state of things it is difficult to see what would prevent his making a claim for a proportional part of his debt against the estate, to be paid out of the interest of the other heirs of the estate. The estate would be free from the appellant's claim, so far as Margaret was concerned, but would it be free from paying any part of the appellant's claim, so far as the other parties in interest were concerned? We think not.

But it is said that the appellant's claim against the estate was discharged by the deed of June 7th, 1867.

The question for us to determine is, whether the appellant has a valid claim against the estate, and not whether there is estate remaining to pay his claim, provided he has a valid one. Whether the appellant can eventually obtain payment of his claim out of the estate, or not, throws no light on the question whether the estate owes him or not. A large estate urnishes no evidence that the estate is indebted, neither does the want of any estate furnish evidence that the estate is not indebted. If it be true that the appellant, by joining in the deed referred to, has deprived the estate of the means to pay his demand, then his claim will have to remain unpaid. It seems to us that the effect of the deed referred to is not before us. The question will probably arise when the appellant seeks to collect his claim out of the estate.

We advise judgment for the appellant.

In this opinion the other judges concurred.