OTTO BROSTY ET UX. *vs.* WILLIAM F. THOMPSON.

Third Judicial District, Bridgeport, April Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The rule that all prior oral negotiations are merged in the subsequent
    written instrument, has no application where the parties do not
    intend to embody their entire oral agreement in the writing.
The question of their intent is one for the determination of the trial
    court, in view of their language and conduct and of all the sur-
    rounding circumstances.
Such determination will not be reviewed on appeal, unless the record
    shows an error of law or of logic in reaching it.

Argued April 17th—decided June 8th, 1906.

ACTION for the conversion of live stock and other per-
sonal property, brought to and tried by the Court of Com-
mon Pleas in Fairfield County, *Curtis J. ;* facts found and
judgment rendered for the defendant, and appeal by the
plaintiffs. *No error.*

*Clitus H. King* and *Henry Greenstine*, for the appellants
(plaintiffs).

*Edward F. Hall*, for the appellee (defendant).

TORRANCE, C. J. The plaintiffs and the defendant
entered into an oral agreement relating to the sale, by the
plaintiffs to the defendant, of a farm and of certain per-
sonal property used thereon. Subsequently they executed
a written contract embodying the terms of the oral agree-
ment as to the sale of the farm, which was silent as to the
personal property agreed to be sold under the oral agree-
ment ; and the question, upon the present appeal, is whether
the prior oral agreement for the sale of the personal prop-
erty is available to the defendant upon the facts found.
These facts may be summarized as follows : The plaintiffs

in April, 1905, owned a farm in this State on which was used the personal property described in the complaint, which personal property was less than $300 in value. The plaintiffs placed the farm and said personal property in the hands of a broker to sell, and he offered it for sale to the defendant for the lump sum of $3,600. The defendant and the broker visited the farm, and examined it and said personal property, and the defendant then told the broker that he would buy the farm and the personal property for $3,600, but that all he could pay down was $300. Subsequently, in the early part of April, 1905, the plaintiffs and the defendant agreed to the following terms proposed by the broker: the plaintiffs to deliver the farm and said personal property to the defendant on May 1st, 1905, the personal property to be the defendant's absolutely, and the real estate to be delivered to the defendant under a contract of sale, the terms of which were subsequently embodied by the broker in a writing called Exhibit A, executed by the parties on April 18th, 1905. In said writing the plaintiffs agreed to convey the farm to the defendant by a suitable deed, "upon the following conditions," which may be summarized as follows: (1) the defendant was to pay to the plaintiffs, upon the execution of the writing, $300; (2) he was to pay to them $30 on the first day of May, 1905, and a like sum on the first day of every month thereafter, until the sum of $1,700 should be paid in full; (3) he was to assume and pay the mortgage on the farm, and the interest thereon as it fell due; (4) he was to pay all taxes assessed upon the farm and to keep the buildings insured for a specified amount; and (5) he was to pay interest upon the unpaid portion of the $1,700 at an agreed rate; and finally he was to forfeit all claims to the farm and to all money paid under the agreement, if he failed to make any of the agreed payments.

Upon the execution of the writing the defendant paid to the plaintiffs $300 as agreed, also $20 in payment of the interest due upon the mortgage to July 1st, 1905. The writing was silent as to the sale or disposition of the per-

sonal property. In this entire transaction the defendant did not meet the plaintiffs but dealt exclusively with the broker. On May 1st, 1905, the plaintiffs delivered, and the defendant took, possession of the farm and of the personal property under the foregoing agreement; and shortly thereafter he sold said personal property for $194; notified the broker that he abandoned the contract, and made no further payments thereon.

Upon the trial the plaintiffs admitted that the personal property was part of the subject-matter of the oral agreement between the parties, but claimed that by that agreement the title to the personal property was to remain in the plaintiffs until the title to the farm passed to the defendant. The evidence of the existence and terms of the prior oral agreement for the purchase and sale of the farm and the personal property, came in without objection, apparently; but after it was in the plaintiffs claimed that "the court should disregard the evidence, and treat the written agreement as the entire contract between the parties." This claim the court overruled, and from all the evidence in the case found the facts aforesaid, and that the parties did not intend to embody the entire oral agreement in the written one.

The evidence is not before us, but upon the record as it stands we must assume that it warranted the court in finding as it has.

The plaintiffs claim that the existence of the written agreement rendered the prior oral agreement between the parties, for the purchase and sale of the personal property, of no avail to the defendant. This claim is based upon the so-called "parol evidence rule," that where parties merge all prior negotiations and agreements in a writing, intending to make that the repository of their final understanding, evidence of such prior negotiations and agreements will be rejected as immaterial. The rule itself is firmly established; *Galpin* v. *Atwater*, 29 Conn. 93, 97; *Averill* v. *Sawyer*, 62 Conn. 560, 568, 27 Atl. 73; *Caulfield* v. *Hermann*, 64 Conn. 325, 327, 30 Atl. 52; and the only

question is whether it is applicable in this case.   We think
it is not.   Whether the parties intended the writing to em-
body their entire oral agreement or only a part of it, was a
question for the trial court, to be determined from the
conduct and language of the parties and the surrounding
circumstances; and that court has found that the parties
had no such intent, and there is nothing in the record to
show that the court, in reaching that conclusion, erred
either in law or in logic.   4 Wigm. on Ev. § 2430.   Where
the parties do not intend to embody their entire oral agree-
ment in the writing, the rule invoked by the plaintiffs does
not apply.   *Collins* v. *Tillou*, 26 Conn. 368·; *Clarke* v.
*Tappin*, 32 id. 56; *Hall* v. *Solomon*, 61 Conn. 476, 482,
23 Atl. 876; *Averill* v. *Sawyer*, 62 Conn. 560, 27 Atl. 73;
*Chapin* v. *Dobson*, 78 N. Y. 74.   That rule does not apply
in this case.

There is no error.

In this opinion the other judges concurred.